828 F.2d 110
 14 Media L. Rep. 1625
 In re the Matter of The NEW YORK TIMES COMPANY, New York
News Inc. and The Associated Press, Appellants.
UNITED STATES of America,
v.
Mario BIAGGI and Meade Esposito, Defendants-Appellees.
 Nos. 267, 355, Docket 87-1324, 87-1392.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 2, 1987.
Decided Sept. 14, 1987.
 
 David A. Schulz, New York City (Rogers & Wells, Richard N. Winfield, Michael F. Coyne, Thomas J. Lilly, Deborah R. Linfield, Marjorie Thalheimer Coleman, Laura R. Handman, of counsel), for appellants.
 Edward Brodsky, New York City (Spengler Carlson Gubar Brodsky & Frischling, Thomas H. Sear, Robert J.A. Zito, of counsel), for defendant-appellee Meade Esposito.
 Barry Slotnick, New York City, for defendant-appellee Mario Biaggi.
 Before FEINBERG, Chief Judge, and PIERCE and ALTIMARI, Circuit Judges.
 FEINBERG, Chief Judge:
 
 
 1
 The New York Times Company, New York News Inc. and The Associated Press appeal from two separate orders of the United States District Court for the Eastern District of New York, Jack B. Weinstein, Ch.J., denying their motions to make public certain papers filed in connection with pretrial motions in the criminal prosecution of Mario Biaggi and Meade Esposito. The first order denied appellants' motion to make public certain papers filed under seal in connection with a defense motion to suppress evidence obtained by electronic surveillance pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. Sec. 2510 et seq., upon a general finding that defendants' interests in a fair trial and the interests of third parties who are referred to in the motion papers justified continued sealing of the papers. The second order denied appellants' motion to make public certain papers filed under seal in connection with a defense motion to preclude the use at trial of a wiretapped conversation between Meade Esposito and an unindicted co-conspirator, upon an apparent finding that the interests of one or more third parties who are referred to in the wiretapped conversation supported continued sealing of the motion papers. For the reasons indicated below, we vacate the district court's orders and remand for proceedings consistent with this opinion.
 
 
 2
 This case involves the well-publicized criminal prosecution of Congressman Mario Biaggi and Meade Esposito, the former Chairman of the Executive Committee of the Kings County (Brooklyn) Democratic Committee, for alleged corrupt activities involving Coastal Dry Dock and Repair Corporation. The criminal trial is currently under way in the district court. A significant portion of the government's evidence stems from electronic surveillance of defendants and several unindicted co-conspirators conducted pursuant to Title III.
 
 
 3
 On June 5, 1987, defendants-appellees Biaggi and Esposito moved to suppress the evidence derived from the Title III surveillance on the ground that no probable cause existed to warrant such surveillance. Defendants' motion papers and those of the government in opposition were filed under seal. The papers and the exhibits thereto contain, among other things, (1) the government's initial application and several supporting affidavits seeking authorization for electronic surveillance of Meade Esposito and several other named and unnamed persons; (2) the initial order granting that application; (3) references to, and excerpts from, conversations from a wiretap of an unindicted co-conspirator, authorized pursuant to a previous application under Title III, upon which the government relied to establish probable cause for the wiretap authorization at issue; and (4) references to, and excerpts from, intercepted conversations obtained pursuant to the initial order and extensions thereof.
 
 
 4
 On July 8, 1987, appellants moved to have these motion papers unsealed and to have any hearing on the suppression motion held in open court. Judge Weinstein held a hearing in open court on July 9, 1987 on appellants' motion, at which time the government stated that it did not object to disclosure. Defendants, however, did object, arguing that Title III required continued sealing of the motion papers unless appellants could show good cause why the papers should be unsealed. Defendants also argued that disclosure would prejudice their Sixth Amendment right to a fair trial, their privacy rights and the privacy rights of third parties.
 
 
 5
 On July 9, 1987, without a hearing on the suppression motion, Judge Weinstein in open court denied defendants' motion to suppress the wiretap evidence. The judge stated that the motion papers provided him with all the information he needed to determine that there was probable cause to support the wiretap orders. Therefore, according to the judge, it was not necessary to address appellants' request that any hearing on the suppression motion be held in open court. Judge Weinstein also ruled in open court that the papers filed in connection with the suppression motion should remain under seal to protect "the interest of the defendants in a fair trial and ... the interest of third parties who are referred to in the tapes...." The judge expressed concern that "unless documents of this kind can be sealed in the judgment of the court, it will make it next to impossible in many instances for defendants to make appropriate motions. They'll be chilled from making such motions." By order dated July 14, 1987, the judge directed that the motion papers remain sealed. Six days later, this court granted appellants' motion for an expedited appeal from that order.
 
 
 6
 On August 21, 1987, appellants again appeared before Judge Weinstein and moved for disclosure of certain papers filed under seal in connection with defendants' pretrial motion pursuant to Rules 403 and 404 of the Federal Rules of Evidence to preclude the use at trial of a January 8, 1986 wiretapped conversation between Meade Esposito and an unindicted co-conspirator. The judge held that at trial he would exclude evidence of that conversation, stating that it "describe[s] another political figure and possibly can be inferred to suggest that activities similar to ones now being charged took place with that political figure." Judge Weinstein also ruled that the motion papers should remain under seal, expressly stating that he was not resting his decision to continue the seal on potential prejudice in jury selection, but rather on privacy interests. Later, in open court on August 21, 1987, the government asked Judge Weinstein to reconsider his decision to exclude the January 8, 1986 conversation. In doing so, the government disclosed many details of the conversation, including the fact that the political figure described in the conversation was Executive Assistant to the Chairman of the Republican Party in Suffolk County and his name. Despite this disclosure, by order dated August 24, 1987, the district court directed that the papers at issue remain under seal. A few days later, appellants requested the district court to reconsider its order in light of public disclosure of the political figure named in the papers. This request was denied. Shortly thereafter, this court granted appellants' motion for an expedited appeal from the August 24, 1987 order as well, and the appeal was consolidated for oral argument purposes with appellants' appeal from the July 14, 1987 order.
 
 
 7
 Although none of the parties has challenged our jurisdiction to hear appeals from what appear to be two interlocutory orders, we must address the question of whether Judge Weinstein's orders are appealable. We believe the orders are appealable for two reasons. First, the collateral order doctrine of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) applies to the appeals, since deferral of a ruling on appellants' claims until a final judgment in the underlying criminal prosecution is entered would effectively deny appellants much of the relief they seek, namely, prompt public disclosure of the motion papers. Cf. Westmoreland v. Columbia Broadcasting System, Inc., 752 F.2d 16, 19 (2d Cir.1984), cert. denied, 472 U.S. 1017, 105 S.Ct. 3478, 87 L.Ed.2d 614 (1985); In re Herald Co., 734 F.2d 93, 96 (2d Cir.1984). Moreover, as we observed in In re National Broadcasting Co. (United States v. Myers), 635 F.2d 945, 949 n. 2 (2d Cir.1980), there is an even more basic reason why Judge Weinstein's orders are appealable now. Appellants' claims could have been treated by the district court as a new civil case, as opposed to an intervention in the pending criminal case, and the orders would have been final in that case. No jurisdictional significance should attach simply because the district court chose to treat appellants as intervenors in the criminal proceeding.
 
 
 8
 Turning to the merits, these appeals present two main questions: (1) whether the public's qualified First Amendment right of access to criminal trials extends to the pretrial motion papers filed here under seal, whether or not a hearing on the motion is held; and (2) to what extent, if any, must a court consider in determining whether public access is appropriate the fact that Title III material is contained within such motion papers.
 
 
 9
 The Supreme Court has indicated that a qualified First Amendment right of access to criminal proceedings extends to certain pretrial proceedings. See Press-Enterprise Co. v. Superior Court, --- U.S. ----, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) ("Press-Enterprise II") (qualified First Amendment right of access to criminal proceedings extends to preliminary hearings as conducted in California); Waller v. Georgia, 467 U.S. 39, 46, 104 S.Ct. 2210, 2215, 81 L.Ed.2d 31 (1984) (defendant's Sixth Amendment right to an open trial prevented total closure of a suppression hearing, indicating that the First Amendment right would in most instances attach to such proceedings). Even prior to Press-Enterprise II and Waller, this court had recognized that the First Amendment extends some degree of public access to a pretrial suppression hearing. In re Herald Co., 734 F.2d at 99. We there noted
 
 
 10
 It makes little sense to recognize a right of public access to criminal courts and then limit that right to the trial phase of a criminal proceeding, something that occurs in only a small fraction of criminal cases. There is a significant benefit to be gained from public observation of many aspects of a criminal proceeding, including pretrial suppression hearings that may have a decisive effect upon the outcome of a prosecution.
 
 
 11
 734 F.2d at 98. The same logic applies in extending a qualified First Amendment right of access to a pretrial hearing on a defense motion to preclude the use of certain evidence at trial pursuant to Rules 403 and 404 of the Federal Rules of Evidence. Public disclosure of such proceedings enhances the basic fairness of the judicial process and the appearance of fairness that is essential to public confidence in the system. Cf. Press-Enterprise II, 106 S.Ct. at 2740-41. With respect to a motion to suppress evidence obtained by the government, in particular, "[t]here is a legitimate public interest in knowing the grounds on which government conduct in obtaining evidence is challenged...." In re Herald Co., 734 F.2d at 101.
 
 
 12
 It does not necessarily follow, however, that because there is a qualified public right of access to a pretrial suppression hearing there is also a similar public right of access to written documents submitted in connection with a suppression motion. The Supreme Court has not yet decided this question. While we did not address the issue head on in In re Herald Co., our analysis clearly indicated that the First Amendment right of access applicable to a suppression hearing extends to the exhibits at the hearing. 734 F.2d at 101. The opinion does not decide, however, the issues raised by application of the First Amendment right of access to the motion papers that had been filed under seal in the case.
 
 
 13
 Other circuits that have addressed this question have construed the constitutional right of access to apply to written documents submitted in connection with judicial proceedings that themselves implicate the right of access. See, e.g., In re Washington Post Co., 807 F.2d 383, 390 (4th Cir.1986); Associated Press v. United States District Court, 705 F.2d 1143, 1145 (9th Cir.1983). We agree that a qualified First Amendment right of access extends to such documents. Access to written documents filed in connection with pretrial motions is particularly important in the situation presented by Judge Weinstein's July 14, 1987 order, where no hearing is held and the court's ruling is based solely upon the motion papers.
 
 
 14
 Appellees emphasized at oral argument that the recognition of even a qualified First Amendment right of access to pretrial motion papers submitted in connection with a criminal proceeding will have a chilling effect upon a defendant's willingness to make pretrial motions in future cases, since a defendant will be hesitant to include in his papers material similar to that proffered here. The argument is a substantial one, although we note that fair trial and privacy interests are often implicated by actions taken, or responses made, in connection with the judicial process. To this extent, chilling effects are no novelty. However, where a potential future chilling effect results from the application of a qualified First Amendment right of access, the chilling effect need not be ignored. The court, in applying the balancing test mandated by the First Amendment, should give added weight to fair trial and privacy interests where requiring disclosure will have a potential chilling effect on future movants.
 
 
 15
 Appellees also argue that the public's right of access to documents containing Title III material filed in connection with a pretrial motion in a criminal proceeding is expressly and deliberately limited by the statutory sealing requirements of Title III. They stress that 28 U.S.C. Sec. 2518(8)(b) prohibits the disclosure of any application or order made and sealed pursuant to Title III except upon a showing of good cause.
 
 
 16
 Title III establishes strict procedures for obtaining wiretap authorizations and narrowly prescribes the manner in which wiretap information can be used or disclosed. 18 U.S.C. Sec. 2511 subjects to criminal and civil liability anyone who wiretaps or discloses information so obtained except as provided in Title III. Sections 2516 and 2518 provide for application to be made to a judge in order to obtain authorization for a wiretap and establish strict standards which must be applied by the judge in determining whether such authorization is appropriate. Section 2515 provides that wiretap evidence may not be received in evidence in any trial, hearing or other proceeding before a federal or state governmental body if disclosure of the information would violate Title III. The first two subsections of Section 2517 provide authorization to investigative or law enforcement officials to disclose and use wiretap information in the performance of their official duties and to provide wiretap information to other law enforcement officials. Section 2517(3) provides that any person who has properly obtained wiretap information may disclose such information "while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or of any State or political subdivision thereof." Section 2518(8)(a) provides for the sealing of the contents of intercepted communications and that the presence of the seal, or a satisfactory explanation for the absence thereof, is a prerequisite for the use or disclosure of wiretap information under Section 2517(3).
 
 
 17
 It is obvious that although Title III authorizes invasions of individual privacy upon compliance with certain stringent conditions, the protection of privacy was an overriding congressional concern. The Senate committee report that accompanied Title III described the state of the law prior to passage of Title III as thoroughly unsatisfactory and stressed that Title III would provide protection for privacy lacking under prior law. The report stated:
 
 
 18
 The tremendous scientific and technological developments that have taken place in the last century have made possible today the widespread use and abuse of electronic surveillance techniques. As a result of these developments, privacy of communication is seriously jeopardized by these techniques of surveillance. Commercial and employer-labor espionage is becoming widespread. It is becoming increasingly difficult to conduct business meetings in private. Trade secrets are betrayed. Labor and management plans are revealed. No longer is it possible, in short, for each man to retreat into his home and be left alone. Every spoken word relating to each man's personal, marital, religious, political, or commercial concerns can be intercepted by an unseen auditor and turned against the speaker to the auditor's advantage....
 
 
 19
 It would be ... difficult to devise a body of law from the point of view of privacy or justice more totally unsatisfactory in its consequences [than the present state of the law]. The need for comprehensive, fair and effective reform setting uniform standards is obvious. New protections for privacy must be enacted. Guidance and supervision must be given to State and Federal law enforcement officers. This can only be accomplished through national legislation.
 
 
 20
 S.Rep. No. 1097, 90th Cong., 2d Sess., 67, 69 (1968), reprinted in 1968 U.S.Code Cong. & Ad.News 2112, 2154, 2156. See also Gelbard v. United States, 408 U.S. 41, 46-49, 92 S.Ct. 2357, 2360-62, 33 L.Ed.2d 179 (1972) (describing the importance Title III places on privacy interests); United States v. Dorfman, 690 F.2d 1230, 1232 (7th Cir.1982).
 
 
 21
 We thus agree with appellees that the right of privacy protected by Title III is extremely important. Nevertheless, where a qualified First Amendment right of access exists, it is not enough simply to cite Title III. Obviously, a statute cannot override a constitutional right.[1] We do not suggest that the existence of Title III material within the motion papers is of little or no significance. Indeed, much of what we have already said suggests precisely the opposite. Certainly, the privacy interests of innocent third parties as well as those of defendants that may be harmed by disclosure of the Title III material should weigh heavily in a court's balancing equation in determining what portions of motion papers in question should remain sealed or should be redacted. In this regard, we note the commendable concern Judge Weinstein displayed in attempting to protect the Title III privacy interests at stake in this case. The job of protecting such interests rests heavily upon the shoulders of the trial judge, since all the parties who may be harmed by disclosure are typically not before the court.
 
 
 22
 Thus, our recognition of a qualified First Amendment right of access to the motion papers filed here does not mean that the papers must automatically be disclosed. The First Amendment right of access to criminal proceedings is not absolute. Proceedings may be closed and, by analogy, documents may be sealed if "specific, on the record findings are made demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.' " Press-Enterprise II, 106 S.Ct. at 2743, citing Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1984). Such findings may be entered under seal, if appropriate. In re Herald Co., 734 F.2d at 101. Broad and general findings by the trial court, however, are not sufficient to justify closure. "The First Amendment right of access cannot be overcome by the conclusory assertion that publicity might deprive the defendant of [the right to a fair trial]." Press-Enterprise II, 106 S.Ct. at 2744. Where privacy interests in wiretapped conversations are asserted, the court should consider "whose privacy interests might be infringed, how they would be infringed, what portions of the tapes might infringe them, and what portion of the evidence consisted of the tapes." Waller, 467 U.S. at 48, 104 S.Ct. at 2216.[2]
 
 
 23
 While Judge Weinstein appropriately looked to the fair trial and Title III privacy interests at stake, his rulings were not specific enough to meet the requirements of Press-Enterprise II and Waller. Furthermore, our review of the sealed materials indicates that the wholesale sealing of the motion papers was more extensive than necessary to protect defendants' fair trial rights, their privacy interests and the privacy interests of third persons. We note that now that the jury has been impaneled, defendants' fair trial rights can certainly be adequately protected by sequestration, although we leave to the discretion of the trial judge whether the nature of the sealed materials suggests that sequestration is necessary in this case. To protect whatever privacy interests may be prejudiced by disclosure of the motion papers, redaction of names and perhaps portions of the Title III materials contained in the motion papers, or other appropriate measures, as opposed to the wholesale sealing of the papers, might be appropriate in this case. We note, in particular, with respect to the papers that are the subject of Judge Weinstein's August 24, 1987 order, that much of the Title III material contained in the papers has already been publicized. Nonetheless, limited redaction of the Title III material in the papers may still be appropriate.
 
 
 24
 We therefore vacate the July 14, 1987 and August 24, 1987 orders and remand the case to the district court for more specific findings, and, if the judge decides to continue in whole or in part the seal that was in effect prior to his orders, for a determination of what portions of the motion papers in question must remain sealed or must be redacted to preserve other values.
 
 
 25
 Vacated and remanded to the district court for further proceedings consistent with this opinion.
 
 
 
 [1]
 On this view, we need not decide whether, as appellants contend, 28 U.S.C. Sec. 2518(8)(b), which authorizes, upon a showing of good cause, the release of applications and orders sealed under the provisions of Title III is simply not applicable here because appellants are not seeking access to Title III applications and orders as such, but merely Title III material to the extent it is contained in the motion papers filed with the court
 
 
 [2]
 In Waller, the wiretap evidence at issue was derived from wiretaps authorized under a Georgia wiretap statute