708 F.Supp. 603 (1989)
In re Application of NEW YORK TIMES COMPANY, the Associated Press, and Newsday, Inc., Applicants for Intervention.
UNITED STATES of America,
v.
Emanuele ADAMITA, et al., Defendants.
No. SS 88 Cr. 217 (JES).
United States District Court, S.D. New York.
March 28, 1989.
*604 George Freeman, New York City, for New York Times Co.
Rogers & Wells, New York City, for The Associated Press; Richard Winfield, of counsel.
Nancy Richman, Melville, N.Y., for Newsday, Inc.

OPINION AND ORDER
SPRIZZO, District Judge:
This application is brought by the New York Times Company, the Associated Press, and Newsday, Inc., seeking to intervene and to obtain access to the proceedings previously sealed and to all future proceedings in this case.
At the outset it should be noted that although the application is styled as a motion to intervene under Rule 24, Fed.R. Civ.P. 24 has no applicability to criminal cases. Nor is the Court aware of any provision of the Federal Rules of Criminal Procedure that would permit a third party to intervene in a criminal case. The movants apparently rely on the Second Circuit's decision in In re Application of the Herald Company, 734 F.2d 93 (2d Cir.1984) where the Court noted that the district judge in that case had permitted a limited intervention for the purpose of challenging a closure order. However, that case held only that the denial of the motion on the merits was appealable pursuant to the collateral order doctrine. The Court never addressed the procedural propriety of the intervention permitted by the district court.
Given the clear inapplicability of the rules of civil procedure to criminal cases, the Court is constrained to deny the application for limited intervention under Rule 24 of the Federal Rules of Civil Procedure. However, the Court will treat the application as a miscellaneous civil motion pursuant to Local Rule 5(a) of the Rules for the Division of Business Among District Judges. Cf. Matter of the New York Times Company, 828 F.2d 110, 113 (2d Cir.1987), cert. denied, ___ U.S. ___, 108 S.Ct. 1272, 99 L.Ed.2d 483 (1988).

BACKGROUND
The factual circumstances which give rise to the present application are as follows. The trial in this case commenced on October 31, 1988, and is expected to be concluded by the middle of April, 1989. For the first four months of the trial, the case received virtually no public attention. However, around the middle of February, 1989, prompted by some statements made by the Court during rulings on some motions to suppress, an article appeared in the Manhattan Lawyer. See Manhattan Lawyer, Feb. 21-27, p. 5 col. 1. Because the Manhattan Lawyer is a newspaper which was not likely to reach the attention of the jury, neither the Court nor the parties were greatly concerned about that publicity.
Nevertheless, in the interest of avoiding any possible unfairness to either the government or the defendants, the Court directed that future transcripts of arguments with respect to legal applications and motions would not be available to persons other than the parties. No specific factual findings justifying that limited closure *605 order were made because no objections were raised to that decision and because, at least at that point, all parties appeared to agree with the Court's decision.
The matter remained in that posture until March 6, 1989, when the Court heard argument on the defendants' motions to dismiss pursuant to Rule 29 of the Federal Rules of Criminal Procedure. That argument took place in open court and several members of the press were present. At the conclusion of oral argument the government informed the Court that certain attorneys representing acquitted defendants might be giving interviews to the press, in contravention of an earlier order of the Court which precluded such interviews during the trial. At that point the Court indicated that the previous order applied to attorneys for acquitted defendants while the case was on trial. In addition, the Court sealed the transcript of the March 6, proceeding. See Trial Transcript ("Tr.") at 7851.
On March 7, 1989 in view of extensive publicity concerning the proceedings on March 6, 1989,[1] the Court, on application of the New York Times, unsealed the transcript of March 6, 1989, over the objections of most of the defendants. See Tr. at 7884. On the same day the Court inquired as to whether any of the parties had any objections to the New York Times' application to unseal the transcript for both past and future proceedings. When several defendants objected, the Court directed that the matter be heard on formal motion papers.[2] In addition, in an effort to determine the extent to which the publicity of March 7 may have affected the parties' right to a fair trial, the Court scheduled a voir dire of the individual jurors to take place on March 9, 1989.
On March 9, 1989 representatives of the press appeared and requested that the voir dire of the jury be opened to the public. The Court denied that application and reserved decision on all other applications until the position of all the defendants could be ascertained.
Since no formal motion papers had as yet been filed by the defendants, on March 14, 1989 the Court inquired whether any papers would be filed or whether there were any objections to the lifting of the Court's sealing order with respect to legal arguments both in the past and in the future. The government did not object to vacating the sealing order but some defendants did. Because the Court was concerned that requiring the defendants to state their positions in open court might in itself compromise the defendants' right to a fair trial, the Court invited counsel into the robing room for that purpose.
After hearing the parties, the Court concluded that there was no sufficient basis to continue the sealing order in view of the publicity that had already occurred and the voir dire conducted on March 9, which reflected no substantial prejudicial impact on the jury arising out of that publicity. However, the Court and all parties agreed, that the transcript of the individual voir dire of the jurors should not be made public.
In addition, counsel for two of the defendants requested that a certain portion of the transcript of the March 13 proceedings remain sealed. Based upon the arguments made, the Court concluded that the interest of those defendants in a fair trial clearly outweighed any public interest in disclosure, at least for the limited period between March 13 and the time the jury would return a verdict. The transcript of that in camera proceeding incorporating *606 those findings has been sealed and is available for appellate review.
In sum, as of the conclusion of the hearing on March 14, 1989, the transcripts of all legal arguments both prior to and after the movants made their application have been opened fully to the public. The only portions of the transcript that now remain sealed are the individual voir dire of the jurors and a limited portion of the March 13 proceeding.

DISCUSSION
It is unquestioned that the press may assert the public's right under the First Amendment to have access to certain trial proceedings, see Press Enterprise Co. v. Superior Court, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986), and that a Court may not deny that access without articulating its basis for so doing, see id. at 13-14, 106 S.Ct. at 2743-2744; Herald Co., supra, 734 F.2d at 100.
With respect to the transcript of March 13, 1989, the Court agrees with the defendants' counsel that disclosure of certain portions of that transcript would substantially prejudice their right to a fair trial. The Court having found that the prejudicial impact of the evidence elicited in that portion of the transcript clearly outweighs any probative value to the government, it follows that a strong likelihood exists that were that evidence to become available to the jury, a mistrial, at least as to those defendants, might be required. Cf. Marshall v. United States, 360 U.S. 310, 312-13, 79 S.Ct. 1171, 1172-73, 3 L.Ed. 2d 1250 (1959).
Given that circumstance, the Court finds that any interest movants have in public disclosure is clearly outweighed by the right of those defendants to a fair trial. In addition, the Court finds that the sealing of that portion of the record for the remainder of this trial is the least restrictive alternative that will effectively protect the rights of the defendants in this case. See Press Enterprise, supra, 478 U.S. at 13-14, 106 S.Ct. at 2743-2744.
Moreover, upon reconsideration the Court adheres to its original determination that the transcript of the midtrial voir dire of the jury on March 9, 1989 cannot be disclosed. No First Amendment rights attach to this type of proceeding both because it has not traditionally been open to the public and because it is neither logical nor efficacious to disclose publicly an examination relating to the potential effects of previous prejudicial publicity. As the Fifth Circuit recently said in a similar situation:
Experience and logic do indeed provide the reasons why midtrial proceedings involving the questioning of jurors have traditionally been closed to the public: holding such proceedings in open court would itself introduce an element of bias and would substantially raise the risk of destroying the effectiveness of the jury as a deliberative body.... The interest in preserving the jury as an impartial, functioning, deliberative body is not only a higher value than that served by openness here, it is a sine qua non of our system of criminal justice....
United States v. Edwards, 823 F.2d 111, 117 (5th Cir.1987), cert. denied, ___ U.S. ___, 108 S.Ct. 1109, 99 L.Ed.2d 270 (1988). Thus, the Court is not required to open those proceedings to the public. It follows that the transcript of the voir dire should not be released until a verdict has been returned.
Moreover, unlike the situation in Edwards, where a redacted transcript omitting the jurors' names was released, release of the transcript here, before the end of the trial, is likely to exacerbate the very problem of prejudicial publicity the closed voir dire was designed to investigate. This is especially true since the law compels an individual voir dire of the jury to avoid exposing untainted jurors to publicity of which they were not previously aware. The Court finds, therefore, that sealing the transcript of the voir dire until the end of the trial is the least restrictive alternative available to protect the defendants' right to a fair trial.

*607 CONCLUSION
Transcripts of all proceedings in the above-captioned action with the exception of the midtrial voir dire of the jury on March 9, 1989 and a portion of the proceedings of March 13, 1989, shall be made available to the public. Transcripts of all future proceedings shall be made available to the public unless the Court otherwise orders, based upon appropriate findings.
It is SO ORDERED.
NOTES
[1] Stories related to this case appeared in the March 7, 1989 issues of New York Newsday, the New York Times, the Daily News, and the New York Post, and went out on the wire of the Associated Press.
[2] The issue of the Court order precluding the parties from making statements to the press was also raised, but none of the parties expressed any interest in making such statements. The Court therefore saw no reason to vacate that order. However, when the press later became concerned that some of the Court's remarks on March 7, 1989 could be construed as extending that order to the press as well, the Court made it clear to the press that that order applied only to the parties.