JED S. RAKOFF, U.S.D.J.
*745 Earlier this year, plaintiffs Document Technologies, Inc., Epiq Systems, Inc., and Epiq eDiscovery Solutions, Inc. (collectively, "DTI") moved this Court for a preliminary injunction enjoining defendants Steve West, John Parker, Seth Kreger, and Mark Hosford (collectively, the "Employee Defendants") from, inter alia, "using any of DTI's confidential, proprietary, and trade secret information," or "continuing to improperly interfere with DTI's contracts *746 and business relationships." ECF No. 5. DTI alleged that the Employee Defendants conspired with DTI's competitor, defendant LDiscovery, LLC ("LDiscovery"), to misappropriate DTI's trade secrets and solicit DTI's customers in violation of their employment agreements and state and federal law.
On May 30, May 31, and June 1, 2017, the Court held a three-day evidentiary hearing to determine whether plaintiffs were entitled to injunctive relief, and, on the basis of the evidence presented at that hearing the Court denied plaintiffs' motion in its entirety. ECF Nos. 70, 74. In the course of so doing, the Court concluded that certain allegedly confidential information was not confidential as a matter of law. See Opinion dated July 5, 2017 ("July 5 Opinion") at 13, 19-20, 29, ECF No. 74.
DTI now seeks to redact from the hearing transcripts 120 portions of testimony relating to (1) "business strategies, market share, and financials," (2) "internal business operations and processes," and (3) "the identities of and nature of the work performed for customers." Plaintiffs' Motion For Redaction of Confidential Hearing Transcript ("Pl. Mem.") 3, ECF No. 99; see also id. Ex. 1A-C (highlighting the portions of the transcript that DTI seeks to redact); Defendant LDiscovery, LLC's Memorandum in Opposition to Plaintiffs' Motion for Redaction ("Def. Mem."), Ex. 1 (listing each portion that DTI seeks to redact), ECF No. 102.[1] Defendants oppose plaintiffs' motion. See ECF Nos. 101, 102. Upon due consideration, the Court hereby denies plaintiffs' motion in its entirety.
DISCUSSION
"The common law right of public access to judicial documents is firmly rooted in our nation's history." Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006). "In order to be designated a judicial document," an item " 'must be relevant to the performance of the judicial function and useful in the judicial process.' " Id. (quoting United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995) (" Amodeo II")). Once a court has determined that documents are judicial documents and that, therefore, a common law presumption of access attaches, "it must determine the weight of that presumption." Id. The weight depends on "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." Id. (quoting Amodeo II, 71 F.3d at 1049 ). "Finally, after determining the weight of the presumption of access, the court must 'balance competing considerations against it.' " Id. at 120 (quoting Amodeo II, 71 F.3d at 1050 ). Those competing considerations include "the privacy interests of those resisting disclosure." Id.
It is also "well established that the public and the press have a 'qualified First Amendment right to ... access certain judicial documents.' " Id. (quoting Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 91 (2d Cir. 2004) ). There are two approaches used to determine whether First Amendment protection applies. Under the "experience and logic" approach, courts must consider "both whether the documents 'have historically been open to the press and general public' and whether 'public access plays a significant positive role in the functioning of the particular process in question.' " Id. (quoting Hartford Courant, 380 F.3d at 91 ). On the other *747 approach, courts consider "the extent to which the judicial documents are 'derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings.' " Id. (quoting Hartford Courant, 380 F.3d at 93 ).
A court's conclusion, however, "that a qualified First Amendment right of access to certain judicial documents exists does not end the inquiry." Id. Documents may nonetheless be sealed or redacted " 'if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.' " Id. (quoting In re New York Times Co., 828 F.2d 110, 116 (2d Cir. 1987) ).
In their briefs, plaintiffs cite Lugosch for the proposition that "[d]ocuments may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest," thereby appearing to accept that First Amendment protections apply in the instant case. See Pl. Mem. 2; Plaintiffs' Reply in Support of Their Motion for Redaction of Confidential Hearing Transcripts ("Pl. Reply") 3. Plaintiffs also state that the Court must balance the public's interest in access against "the privacy interests of those resisting disclosure," Pl. Reply 3, using Lugosch's language regarding the common law presumption of access.
As plaintiffs thus concede that the common law presumption of access and First Amendment protections apply here, they, as the moving party, have the "burden to establish, through competent evidence, that [the transcript] excerpts reveal trade secrets or other confidential business information, the disclosure of which would cause ... clearly defined and serious harm." King Pharm., Inc. v. Eon Labs, Inc., No. 04 Civ. 5540 (DGT), 2010 WL 3924689, at *6 (E.D.N.Y. Sept. 28, 2010) ; see also In re Parmalat Sec. Litig., 258 F.R.D. 236, 244 (S.D.N.Y. 2009) ("The party opposing disclosure must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection.").
Often, courts require such showings to be made in the form of affidavits. See Prescient Acquisition Grp., Inc. v. MJ Pub. Tr., 487 F.Supp.2d 374, 375 (S.D.N.Y. 2007) (noting that the court directed any party seeking to seal a document to submit an affidavit). Here, DTI submitted no affidavits in conjunction with its motion. Nonetheless, DTI argues, the entire preliminary injunction proceeding is relevant to this question and therefore the transcripts from the hearing provide competent evidence that the Court can consider. Pl. Reply 2. While DTI is correct that the sworn testimony of witnesses during the hearing qualifies as competent evidence, the only relevant piece of this evidence that DTI cites in its briefs is the following colloquy between the Court and Adam Seskis, DTI's company's Chief Integration Officer:
THE COURT: The question was: Can you tell me what your findings were on the potential harm to the company. Don't tell me what you looked at. What were the findings, if any, that you made as to the potential harm to the company?
THE WITNESS: We saw risk in our financial plan and we saw harm to our good will tied to the client relationships that we had in addition-
THE COURT: What was the basis for those conclusions?
THE WITNESS: Perception in the marketplace and four of our top salespeople departing at the same time going to a competitor, the disruption to a large number of clients that those individuals represented that were not able to have *748 an orderly transition to other relationship individuals, in addition to having our confidential information in the hands of a competitor at that time based on the forensic analysis.
Tr. at 532, ECF No. 93. Aside from the fact that DTI expected the loss of four key employees to cause disruption, which is not relevant to the redaction request, this testimony merely asserts that having "confidential information in the hands of a competitor" would cause DTI harm, an entirely conclusory statement.
Thus plaintiffs do not cite any examples from the record explaining how the 120 passages they seek to redact would harm them if they were made public. Nor do plaintiffs, as discussed below, cite legal authority supporting redacting the sort of information they propose to seal here. The Court considers each of DTI's three categories in turn:
(1) Business Strategies, Market Share, and Financials
DTI divides its first heading-business strategies, market share, and financials-into three subcategories: (A) the company's expansion into Canada and Washington, D.C., (B) the revenue attributable to the Employee Defendants, and (C) the company's general financial performance.
(A) DTI's Expansion in Canada and Washington, D.C.
Plaintiffs acknowledge that "DTI's general presence in Canada and Washington, D.C. is not confidential, proprietary, or trade secret information." Pl. Mem 4. DTI argues instead that "information about its profitability in these markets and how DTI entered them is." Id. But DTI nonetheless seeks to redact many references that contain little more than a mention of Canada or Washington, D.C. See, e.g., Tr. at 115-21, ECF No. 87 (seeking to redact 26 different references to Canada or D.C.); Def. Mem., Ex. 1 (collecting Canada references, Nos. 1-3, 5-6, 21-24, 27-31, 33, 36, 47-49, 72-73, 75-77, 79-80, 82, 104-08, 112-13, 119, and D.C. references, Nos. 1-3, 6, 24-26, 32, 72-73, 75-78, 81, 83, 112, 119).
The Court finds no reason to redact these references. First, plaintiffs have already publicly disclosed that they do business in Canada and D.C. (their website publicly states that they operate in these regions, they disclosed the information in an unredacted form in their amended complaint, and they did not require that defendants redact this information from their post-hearing summations). Second, the Court already held that "there is nothing 'confidential' about the fact that Canada and Washington, D.C. have law firms and corporate legal departments requiring document review services." July 5 Opinion at 13.
DTI points to two instances in the transcripts where DTI's operations in D.C. and Canada are tied to specific information about DTI's activities: (1) a passage regarding the dollar amount of DTI's initial investments in Canada, Pl. Mem., Ex. 1C at 498:22-499:8, and (2) a passage regarding the dollar amount of the subsequent growth of DTI's Canadian revenues, id. at 500:20-25.
In their briefs, plaintiffs argue that this information could be used by "savvy competitors" to adjust its "business plans and gain a commercial advantage over DTI in the marketplace." Pl. Mem. 4. This assertion is both hypothetical and conclusory. Plaintiffs nowhere explain how this high-level information could be used by a competitor to gain a commercial advantage. Nor do plaintiffs explain the potential magnitude of the harm.
As plaintiffs do not marshal the sort of specific evidence that is required to overcome the presumption of public access, the *749 Court cannot grant plaintiffs' motion to redact these references.
(B) Revenue Attributable to the Employee Defendants
Plaintiffs also want to redact a series of references to the sales attributable to the Employee Defendants. See Def. Mem., Ex. 1, Nos. 37, 44, 58, 68, 70-71, 103, 111. The Court, however, already held, more generally, that "[t]he Individual Defendants' general revenue numbers for 2011 to 2016 ... are not trade secrets." July 5 Opinion at 20 n.11. Moreover, plaintiffs submit no competent evidence for the Court to weigh as to how this information would harm them if it were made publicly available.
In one passage cited by defendants, for example, a witness tells the Court approximately how much revenue was generated by the Employee Defendants in a particular market and what percentage of aggregate sales the Employee Defendants generated in those markets in 2016. But plaintiffs nowhere explain how this information would harm them. They merely note that DTI "has a significant interest in insuring that this confidential business information remains private, as it could be used by competitors to DTI's financial detriment." "Business strategies, market share, and financial data," they continue, "are the sort of material that courts have frequently ordered redacted." Pl. Mem. 5.
The cases plaintiffs cite in support of this proposition all involve specific findings of how disclosure of certain pieces of detailed information would cause harm. See Standard & Poor's Corp. Inc. v. Commodity Exch., Inc., 541 F.Supp. 1273, 1277 (S.D.N.Y. 1982) (finding that the release of trade secret information regarding how a proprietary stock market index is composed would aid competitors and subject individuals who select the stocks in the index to inappropriate pressure from market participants); Gelb v. Am. Tel. & Tel. Co., 813 F.Supp. 1022, 1035 (S.D.N.Y. 1993) (sealing exhibits containing non-public breakdowns of AT & T's revenues by business line and reluctantly sealing exhibits containing non-trade secret information regarding AT & T's marketing tactics which the Court found could be used by AT & T's competitors to injure its reputation).
Here there is no competent evidence of how a top-line number regarding the percentage of sales generated by the Employee Defendants or the total revenue generated by them could harm the company. Thus, the Court has no basis to redact these portions of the hearing transcript.
(C) DTI's General Financial Performance
Plaintiffs also propose to redact information regarding DTI's general revenue, Def. Mem., Ex. 1, Nos. 66, 102, 104, 108, 109, 110, 112, 118, 120, but there is no evidentiary basis for making a finding that this information would harm plaintiffs. Plaintiffs, for example, seek to redact a "ball-park estimate" of the number of employees plaintiffs have in one region to support document reviews, Id. Ex. 1, No. 109, and very general information about how they price their services, id. Ex. 1, No. 118. Plaintiffs also seek to redact statements that one category of their business "represents the majority" of their revenue and that another category "represents about a third." Id. Ex. 1, No. 102.
But plaintiffs do not explain how this information could be used to harm DTI. As plaintiffs have the burden to demonstrate that the release of this information would "work a clearly defined and very serious injury," and they provide no competent evidence regarding how these general pieces of information could be used to do *750 so, there is no basis for the Court to redact these portions of the hearing transcript.
(2) Information about DTI's Internal Business Operations and Processes
Plaintiffs next argue that information about their "confidential business affairs" such as what directives were given by DTI management to employees and other aspects of how DTI manages client relationships should be redacted. See Def. Mem., Ex. 1, Nos. 34-35, 69. Plaintiffs specifically draw attention to two of these three redaction requests, Pl. Mem., Ex. 1B at 282:3-6 and Ex. 1A at 154:22-155:7. But there is no competent evidence in the record to support a finding that the public release of these facts would harm DTI. Each involves fairly innocuous information.
As to the latter information about internal management issues, there is no indication that testimony about the Individual Defendants' reasons for leaving DTI would cause DTI economic harm. And even if it did cause harm, this sort of information is relevant to understanding the instant dispute. Therefore, the Court will not redact these portions of the hearing transcript.
(3) Identities of and Nature of Work Performed for DTI's Clients
Finally, plaintiffs seek to redact all of the references in the hearing materials to the identities of DTI's various clients. Def. Mem., Ex. 1, Nos. 4, 7-20, 38-39, 41-43, 45-46, 50-51, 53-57, 59-61, 65, 74-76, 78, 84-87, 89-91, 93-94, 97-98, 113-17. In their briefs, plaintiffs draw attention to three specific references, one discussing specific DTI customers that one of the Individual Defendants reached out to after his resignation (Pl. Mem., Ex. 1B at 244:2-245:12), one discussing DTI clients listed in a spreadsheet compiled by the Individual Defendants (Pl. Mem., Ex. 1B at 379:10-380:4), and one describing the nature of services performed for a DTI client (Pl. Mem., Ex. 1C at 519:13-15).
The first two references are among the many that the Court already found to be not confidential as a matter of law. See July 5 Opinion, at 19-20. Indeed, DTI itself has not previously treated this sort of information as if it were confidential. For example, during the hearing, DTI's own counsel conceded that two of DTI's client names were not confidential. Tr. at 12, ECF No. 87. Also during the hearing, one of DTI's witness conceded that another client name was not confidential. Tr. at 524-25, ECF No. 93. Further, in their summation following the hearing, plaintiffs' publicly filed papers including references to two other clients. See ECF No. 60. And, DTI sent one of the Employee Defendants a spreadsheet containing all of the relevant client names after that defendant had left DTI and was a member of the public. Thus with regard to the identities of DTI's clients, generally, "the proverbial cat is out of the bag," and plaintiffs' request for redaction is thus "moot." SOHC, Inc. v. Zentis Sweet Ovations Holding LLC, No. 14 Civ. 2270 (JMF), 2014 WL 5643683, at *6 (S.D.N.Y. Nov. 4, 2014) (citing King Pharm., Inc. v. Eon Labs, Inc., No. 04 Civ. 5540 (DGT), 2010 WL 3924689, at *10 (E.D.N.Y. Sept. 18, 2010) ).
The third reference mentioned above requires closer consideration because it includes information about the work performed for the client, not just the client's identity. Thus, this reference implicates the privacy interest of a third-party, and not just the economic interests of DTI. Cohen v. Gerson Lehrman Grp., Inc., No. 09 Civ. 4352 (PKC), 2011 WL 4336679, at *2 (S.D.N.Y. Sept. 15, 2011) (redacting the identity of specific clients where those redactions were "narrowly tailored to conceal the clients' identity" and the "privacy interests" of those clients "outweigh[ed] the presumption of access" as the clients' identities had "no bearing" on the case).
*751 The reference states in relevant part that a client hired DTI to provide "ESI processing and review" services for "an antitrust matter." Tr. 519:13-15, ECF No. 93. Plaintiffs do not explain how this information could be used to harm either DTI or DTI's client. Indeed, this high-level description of the work DTI performed for this client hardly seems like sensitive client information. In all likelihood, the antitrust matter is already a matter of public record. In the absence of some concrete reason as to why the Court should seal this reference, some explanation as to how this information could cause harm, the Court has no basis for redacting these general references to client identities.
Ultimately, portions of hearing transcripts may be redacted only "if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Lugosch, 435 F.3d at 120 (quoting In re New York Times Co., 828 F.2d 110, 116 (2d Cir. 1987) (internal quotations omitted)). "Broad and general findings ... are not sufficient to justify closure." Id. As plaintiffs do not cite competent evidence suggesting that public release of these 120 passages would cause harm, there is no basis for the Court to make specific findings to support redaction. Therefore, the Court hereby denies plaintiffs' motion in its entirety.
The Clerk is instructed to close docket entry number 99.
SO ORDERED.

On July 20, the Clerk of Court issued Notices of Filing of Official Transcript for each day of the evidentiary hearing. See ECF Nos. 88, 90, 92. Plaintiffs timely filed a notice of intent to file a motion to redact, ECF No. 97, and, on August 10, so moved the Court, ECF No. 99.