**UNITED STATES of America, Plaintiff,**

v.

**John GOTTI, Frank Locascio, also known as "Frankie Loc," Salvatore Gravano, also known as "Sammy" and "Sammy Bull," and Thomas Gambino, Defendants.**

No. CR–90–1051.

United States District Court, E.D. New York.

Dec. 21, 1990.

John Gleeson, Asst. U.S. Atty., Brooklyn, N.Y., for U.S.

Bruce Cutler, New York City, for Gotti.

David Greenfield, New York City, for Locascio.

Gerald Shargel, New York City, for Gravano.

Michael Rosen, New York City, for Gambino.

MEMORANDUM AND ORDER

GLASSER, District Judge:

The defendants have been charged with violating 18 U.S.C. § 1962(c) which makes it unlawful for any person employed by or associated with any enterprise engaged in or the activities of which affect interstate commerce, to conduct or participate in the conduct of such enterprise through a pattern of racketeering activity and 18 U.S.C. § 1962(d), which makes it unlawful for any person to conspire to violate § 1962(c). The pattern of racketeering activity alleged includes conspiracy to murder and the murder of Paul Castellano; the murder of Thomas Bilotti; the conspiracy to murder and the murder of Robert DiBernardo; the conspiracy to murder and the murder of Louis DiBono; the conspiracy to murder Gaetano Vastola; the conducting of illegal gambling businesses in New York and Con-

necticut; loansharking conspiracies; obstructions of justice and bribery. Gotti and Gravano are also charged with the conspiracy to murder and the murder of Robert DiBernardo (18 U.S.C. §§ 1952B(a)(1), (5)); the conspiracy to murder and the murder of Liborio Milito. Gotti, Gravano and Locascio are charged with conspiracy to murder Gaetano Vastola (18 U.S.C. § 1959(a)(5)), with conducting an illegal gambling business in New York (18 U.S.C. § 1955) and with conspiracy to obstruct justice (18 U.S.C. § 371). Gotti and Locascio are charged with conspiracy to defraud the United States and finally, Gotti is charged with obstruction of justice in connection with an earlier trial of Thomas Gambino (18 U.S.C. § 1512).

Upon their first appearance before the court on December 12, 1990, the defendant Gambino was released on bail. The government urged that the defendants Gotti, Gravano and Locascio be detained for the reason that no condition or combination of conditions would reasonably assure the safety of other persons and the community. In support of that position, the government submitted under seal a memorandum which included its evidentiary proffer and a discussion of the legal principles it contended were controlling. The government then requested a three day continuance pursuant to 18 U.S.C. § 3142(f). The request was granted and in accordance with a computation as prescribed by Rule 45(a) the bail hearing was adjourned to December 17, 1990. The detention of the defendants until that date was mandated by § 3142(f) and was so ordered.

Shortly prior to the scheduled commencement of the hearing on the 17th, counsel for the detained defendants hand-delivered a letter-request that the bail hearing be closed to the public for the reasons that "their privacy and fair trial interests outweigh the public's interest in having access to the bail proceedings." A letter-response by the government followed. Mindful that "representatives of the press and general public 'must be given an opportunity to be heard on the question of their exclusion,'" *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 609 n. 25, 102 S.Ct. 2613, 2621

n. 25, 73 L.Ed.2d 248 (1982); *In re Application of Herald Co.,* 734 F.2d 93, 101–02 (2d Cir.1984), media representatives present in force were informed that briefs may be submitted by them on the issue of closure by noon (later extended to 5 p.m.) on December 18, 1990. The hearing was adjourned with the consent of the defendants until December 21, 1990.

### Discussion

In *Press–Enterprise Co. v. Superior Court of California,* 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986), the Supreme Court established that "the qualified First Amendment right of access to criminal proceedings applies to preliminary hearings as they are conducted in California." 478 U.S. at 13, 106 S.Ct. at 2743. That decision has been understood to apply to pretrial proceedings which pass the "tests of experience and logic." 478 U.S. at 9, 106 S.Ct. at 2740. Although bail hearings have not passed those tests, a qualified First Amendment right of access to them has nevertheless been recognized. *In re Globe Newspaper Co.,* 729 F.2d 47 (1st Cir.1984); *United States v. Chagra,* 701 F.2d 354 (5th Cir.1983). In addition, the qualified First Amendment right has been held applicable to written documents submitted in connection with judicial proceedings. *In re New York Times Co.,* 828 F.2d 110, 114 (2d Cir.1987). The qualification of the right of access is a recognition that in a given case that right must yield to the Sixth Amendment right of the accused to a fair trial. The Court in *Press–Enterprise* put it thus:

> But even when a right of access attaches, it is not absolute.... While open criminal proceedings give assurances of fairness to both the public and the accused, there are some limited circumstances in which the right of the accused to a fair trial might be undermined by publicity. In such cases, the trial court must determine whether the situation is such that the rights of the accused override the qualified First Amendment right of access.

478 U.S. at 9, 106 S.Ct. at 2740–41 [footnote and citation omitted].

The recognition of that exquisite tension between the First and Sixth Amendments has been expressed in many ways, but perhaps never with more elegant simplicity than in *Waller v. Georgia*, 467 U.S. 39, 46, 104 S.Ct. 2210, 2215, 81 L.Ed.2d 31 (1984): "The central aim of a criminal proceeding must be to try the accused fairly." Although the realization of that aim rests largely upon the shoulders of the trial judge, its realization must also be pursued by the government. That shared obligation was clearly expressed in *Gannett Co. v. DePasquale*, 443 U.S. 368, 384 n. 12, 99 S.Ct. 2898, 2908 n. 12, 61 L.Ed.2d 608 (1979) in these terms:

> The responsibility of the prosecutor as a representative of the public surely encompasses a duty to protect the societal interest in an open trial. But this responsibility also requires him to be sensitive to the due process rights of a defendant to a fair trial. *A fortiori*, the trial judge has the same dual obligation.

In *United States v. Chagra*, 701 F.2d 354, 365 (5th Cir.1983) special emphasis was placed upon the obligation of the trial judge in this regard. "There is no single divine constitutional right to whose reign all others are subject," said the court. "When one constitutional right cannot be protected to the ultimate degree without violating another, the trial judge must find the course that will recognize and protect each in just measure, forfeiting neither and permitting neither to dominate the other."

If the accused has asserted his right to a fair trial, what are the touchstones that should guide the court in determining whether or not the pretrial proceeding should be closed? *Press–Enterprise* teaches that the proceedings cannot be closed

> unless specific, on the record findings are made demonstrating that "closure is essential to preserve higher values and is narrowly tailored to serve that interest." ... If the interest asserted is the right of the accused to a fair trial, the preliminary hearing shall be closed only if specific findings are made demonstrating that, first, there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that

closure would prevent and, second, reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights.

478 U.S. at 13–14, 106 S.Ct. at 2743 [citation omitted].

## A. Substantial Probability That Right to a Fair Trial Will Be Prejudiced

The defendants' assertion that their Sixth Amendment right will be irreparably compromised and they could not be tried fairly is linked entirely to the evidentiary proffer contemplated by the government which consists of electronically intercepted conversations and information gathered from confidential informants. The defendants assert that public disclosure of that information will so infect and inflame all who hear and read it that the resulting prejudice against them will be impossible to overcome.

The media, in their memorandum of law in opposition to closure, correctly recite the observation in *Press–Enterprise* that "The First Amendment right of access cannot be overcome by the conclusory assertion that publicity might deprive the defendant of" the right to a fair trial. 478 U.S. at 15, 106 S.Ct. at 2743. They contend, in essence, that because "there have probably been more words written about him in the media than about any other criminal defendant in recent times" he cannot seriously argue that more publicity will result in a substantial probability of prejudice. The premises of this contention, namely, that one's Sixth Amendment right to a fair trial diminishes as one's notoriety increases is neither good logic nor good law. On the contrary, the true test of our system is to be measured by our commitment to according a fair trial even to the most notorious among us.

The media then assert that the closure of the proceeding and the sealing of the documents would not prevent further publicity probably consisting of "second-hand and less authoritative information about what has transpired beyond closed doors." Carried to its logical conclusion this assertion would dictate that judicial proceedings should never be closed. It is hoped that

the media is sensitive to its responsibility to report accurately and will abjure the temptation to publish information the authenticity of which has not been confirmed or is known to be dubious.

Another assertion and one which is encountered frequently in judicial decisions and in the literature is that "any hearings conducted in private will have the inevitable and unfortunate result of creating doubts in the minds of the public that justice was done and will ultimately result in a diminishing of confidence in the judicial process." Aside from the fact that pretrial detention hearings do not share with criminal trials or other preliminary hearings an unbroken history of public access and thus do not pass the first prong of the test of "experience and logic," *Seattle Times v. U.S. Dist. Ct. for W.D. Wash.*, 845 F.2d 1513, 1516 (9th Cir.1988); *United States v. Chagra*, 701 F.2d 354, 363 (5th Cir.1983); *In re Globe Newspaper Co.*, 729 F.2d 47, 51 (1st Cir.1984), the underlying assumption of this assertion, namely, that the public will suspect a closed hearing in a federal court, conducted by a federal judge, to be little less than a star chamber proceeding, indifferent to fundamental notions of due process and fairness, is a disquieting one and one which I reject in the firm belief that the history of the federal judiciary will not support it.

How does one demonstrate that "there is a substantial probability that the defendant's right to a fair trial will be prejudiced by the publicity that closure would prevent"? I firmly believe that the only meaningful answer is the one expressed in *In re Charlotte Observer*, 882 F.2d 850, 854 (4th Cir.1989), namely that the "constitutional assessment inevitably involves in the end the exercise of judgment." That judgment is to be exercised by the trial judge who has examined the proffered evidentiary material and within the context of the blizzard of publicity that has blanketed the case before him and will continue to blanket it, carefully weighed its potential for frustrating the defendants' Sixth Amendment rights and the significant interest of a democratic society in assuring that those who are accused of crime will be fairly tried. In commenting upon the contention that the trial court "must have positive proof of the impossibility of assuring defendant a fair trial before access may be denied," the court in *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 431 (5th Cir.1981) wrote:

> A forecast of future difficulty is by definition uncertain, but equally uncertain is the rejection of that forecast. Speculative dismissal by an appellate court of a trial judge's admittedly uncertain but quite reasonable prognostication only compounds the problem. The informed and considered judgment of the trial judge should prevail in any choice between such equally speculative results. It is better to err, if err we must on the side of generosity in the protection of a defendant's right to a fair trial before an impartial jury.

The judgment thus exercised will then assuredly be speedily reviewed by an appellate court which, after making its own assessment of the materials that have been sealed and of the context within which that sealing was deemed appropriate, can determine whether the judgment of the trial judge was an abuse of discretion. *Belo Broadcasting Corp.*, 654 F.2d at 430–31.

Applying the "substantial probability" standard to this case drives me to conclude that the bail proceedings should be closed to the press and the public. The correctness of that conclusion is buttressed by the decision of Judge Coffin on behalf of the United States Court of Appeals for the First Circuit in *In re Globe Newspaper Co.*, 729 F.2d 47 (1st Cir.1984) which is remarkably similar on its facts to this case. There too a grand jury returned an indictment charging named defendants with a violation of 18 U.S.C. §§ 1962(c) and (d) alleging predicate acts which include conspiracy to murder a grand jury witness and obstruction of justice. At a bail hearing the evidence offered by the government in support of a motion to deny bail contained excerpts from electronically intercepted conversations at a non-residential apartment alleged to be the headquarters of the defendants' criminal organization. The

bail hearing was closed to the public based upon a finding that "considerations of defendants' Sixth Amendment right to a fair trial, when considered in *combination* with defendants' [privacy] rights under the provisions of Title III unequivocally outweigh the public's right of access to the overheard conversations at this time." 729 F.2d at 49. The magistrate's order was affirmed by the district court and by the Court of Appeals. The reasoning of the court is compelling:

> When the rights of the accused and those of the public come irreconcilably into conflict, the accused's Sixth Amendment right to a fair trial must, as a matter of logic, take precedence over the public's First Amendment right of access to pretrial proceedings. There is little to be gained by admitting the public to pretrial proceedings in order to promote the appearance of fairness if the very presence of the public makes a fair trial impossible.
>
> \*    \*    \*    \*    \*    \*
>
> The fair trial problem presented in this case is compounded by the presence of extremely damaging statements intercepted during an electronic surveillance of two locations at which defendants allegedly planned and carried out illegal activities.

729 F.2d at 53.

The last statement of fact is precisely identical to the facts here. The court there reviewed the provisions of Title III, 18 U.S.C. § 2510 *et seq.* reflecting the strict regulation of electronic surveillance to effectuate the overriding concern of Congress that rights of privacy be protected. In its review, the court discussed the remedy of suppression which a defendant might invoke to protect his privacy rights against public disclosure of his intercepted conversations. For reasons which are entirely applicable here as well, the Court held:

> The defendants could not be expected to mount a challenge to the Title III material until they had had a fair opportunity to inspect the supporting documents; and they could not be expected to delay their challenges to the condi-

tions of release while they marshaled their arguments for suppression. \*  \*  \* In a highly publicized case such as this one, the premature publication of damaging communications that are later determined to have been unlawfully obtained and so not admissible in evidence might make a fair trial impossible, at least in the venue defendant would ordinarily prefer. In addition, the public disclosure of communications intercepted in violation of Title III would vitiate the privacy protection of the statute. Until the Title III material has been tested at a suppression hearing, a court considering whether material may be disclosed to the public should entertain the possibility that it was unlawfully obtained.

729 F.2d at 55.

The media in addressing the Title III issues make reference to *In re New York Times Co.*, 828 F.2d 110, 115–16 (2d Cir. 1987), in which the court noted:

> We thus agree with appellees that the right of privacy protected by Title III is extremely important. Nevertheless, where a qualified First Amendment right of access exists, it is not enough simply to cite Title III. Obviously, a statute cannot override a constitutional right.

In the interest of completeness, a recital of the remainder of that observation which is not reflected in their memorandum, is significant, namely:

> We do not suggest that the existence of Title III material ... is of little or no significance. Indeed, much of what we have already said suggests precisely the opposite. Certainly, the privacy interests of innocent third parties as well as those of defendants that may be harmed by disclosure of the Title III material *should weigh heavily* in a court's balancing equation in determining what portions of ... papers in question should remain sealed or should be redacted.... The job of protecting such interests rests heavily upon the shoulders of the trial judge....

*Id.* (emphasis added).

A careful reading of the government's evidentiary proffer of Title III excerpts

compels the conclusion that the basis of this motion for closure is hardly "a conclusory assertion that publicity might deprive the defendant of that right." *See* 478 U.S. at 15, 106 S.Ct. at 2743. A recital of specific findings to demonstrate that conclusion would necessarily require divulging the contents of those excerpts and would thus defeat the very purpose for which the defendants' request for closure is made. Those findings are hereby declared to be that the contents of the government's evidentiary proffer and the inferences that necessarily flow from them which demonstrate, upon balance, that closure is essential to preserve higher values. The risk of prejudice to those higher values, namely, the defendants' right to a fair trial, is "perfectly obvious and that risk is far more significant than the countervailing interest in publishing the transcript of the [bail hearing] sooner rather than later." 478 U.S. at 20, 106 S.Ct. at 2746 (Stevens, J., dissenting).

## B. Reasonable Alternatives to Closure

Concluding that there exists a substantial probability that the defendants' right to a fair trial will be prejudiced by the publicity that closure would prevent does not end the matter. The court must consider whether there are reasonable alternatives to closure that can adequately protect the defendants' fair trial rights. The alternatives suggested in this regard are voir dire; peremptory challenges; admonitions to the jury; change of venue; redaction; and media self-restraint.

I will refrain from commenting upon media self-restraint beyond stating that the publicity thus far given to this case clearly demonstrates that that is not a reasonable alternative. I have examined in detail the Title III excerpts and the other evidentiary proffers the government proposes to make and conclude that redaction is not a viable alternative. Change of venue as an alternative implicates the defendants' constitutional right to be tried in the state where the crime was committed and the statutory right to be tried in the district in which the offense was committed, U.S. Const. Art. III, § 2, Cl. 3 and Rule 18, Fed.R.Crim.P.

and is not, for those reasons, a reasonable alternative. *See United States v. Chagra*, 701 F.2d at 365 (5th Cir.1983). The very nature of the government's proffer, assuming it will survive a motion to suppress, is in my view of such a prejudicial nature that it would create a pattern of deep and bitter prejudice throughout the community from which a jury will be selected so as to pose voir dire problems that are real and not just imagined. Cases involving particularly violent crimes are more likely to arouse such prejudice. *See Seattle Times v. U.S. Dist. Ct. for W.D. Wash.*, 845 F.2d 1513, 1517–18 (9th Cir.1988). The alternatives of peremptory challenges and jury admonition are similarly not deemed persuasive in this case. In expressing this view, I am mindful that the size of the area from which the jury would be empaneled is a factor to consider. However, I would note that in *In re Globe Newspaper Co., supra*, the defendants were indicted in Boston and in *Chagra, supra*, the defendants were indicted in San Antonio, Texas. In the *World Almanac* 557 (1990), San Antonio is ranked ninth and Boston is ranked nineteenth out of a hundred in the population of U.S. Cities based upon the July 1, 1986 estimate of the U.S. Bureau of the Census and in each, bail hearings were closed to the press and the public after due consideration of reasonable alternatives.

The conclusion stated in *In re Globe Newspaper Co., supra* at 59, expresses precisely the conclusion I reach based upon the foregoing discussion. It reads as follows:

In sum, we find that the First Amendment right of access does extend to bail hearings and to documents filed in support of the parties' arguments at those hearings. We believe, however, that the interests of the press and the public weigh less heavily at this early point in the proceedings than they do later, both because the tradition of openness in bail hearings is not as strong and because the press and public will have later opportunities to examine the material admitted at those hearings. By contrast, the privacy and fair trial interests of the defen-

dants are at their zenith during the bail hearings, since they have not yet had an opportunity to test the material admitted at the hearings. We can scarcely imagine a stronger case for closure than the one now before us, in which the defendants are accused of participation in organized crime, the pretrial publicity is intense, and the material to which the press seeks access is extremely prejudicial. If these bail proceedings must be open to the public, it is difficult for us to conceive of circumstances in which a pretrial proceeding could be closed.

If the suppression hearing establishes that the intercepted communications were lawfully obtained and therefore admissible at trial, the qualified First Amendment right of access may be revisited. It should be clearly understood that this decision is directed to the bail hearing only. Its holding should not be considered as having application, *ex proprio vigore*, to any subsequent preliminary proceeding and it is certainly not intended to have any application to the trial itself.

SO ORDERED.