UNITED STATES of America, Plaintiff,

v.

John GOTTI, Frank Locascio, also known as "Frankie Loc," Salvatore Gravano, also known as "Sammy" and "Sammy Bull," and Thomas Gambino, Defendants.

In re Application of THE NEW YORK POST, The New York Times Company, Capital Cities/ABC, Inc., CBS Inc., National Broadcasting Company, Inc., New York News Inc., Fox Television Stations, Inc., Newsday and New York Newsday, and the Associated Press, Applicants.

No. CR–90–1051.

United States District Court, E.D. New York.

Aug. 6, 1991.

See also 771 F.Supp. 552, and 771 F.Supp. 535.

Joel Cohen, Stroock & Stroock & Lavan, New York City.

**568**

Richard Winfield, Rogers & Wells, New York City, for The Associated Press.

John Gleeson, Asst. U.S. Atty., Brooklyn, N.Y.

Bruce Cutler, New York City.

David Greenfield, New York City.

Gerald Shargel, New York City.

Michael Rosen, New York City.

John L. Pollok, New York City.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

After their initial appearance before the court on December 12, 1990, the defendant Gambino was released on bail and the other three were detained pending a bail hearing to be held on December 17, 1990. Shortly prior to that hearing, counsel for the detained defendants submitted a written request that the bail hearing be held *in camera*. To afford the representatives of the media and the general public an opportunity to respond to that request, the hearing was adjourned upon consent to December 21, 1990. In a Memorandum and Order issued prior to the adjourned hearing, I granted the defendants' request and excluded the media and the public from the courtroom. The basis for that determination is to be found in *United States v. Gotti*, 753 F.Supp. 443 (E.D.N.Y.1990). At the conclusion of that hearing, the courtroom was opened and with the media and the public present, I announced my decision to detain Gotti, Gravano and Locascio. The submissions by the government and the defendants were sealed.

The defendants' request for closure was essentially bottomed upon the government's evidentiary proffer which included conversations electronically intercepted and recorded pursuant to a court order. More specifically, they alerted the court to their intention to move to suppress those conversations on a variety of grounds, some of which they stated were matters of first impression and, they argued, until that motion was decided, publication of those conversations would be highly prejudicial and adversely affect their Sixth Amendment right to a fair trial.

In granting the defendants' request, I relied to a significant extent upon *In re Globe Newspaper Co.*, 729 F.2d 47 (1st Cir.1984), which mirrored this case almost precisely in reflecting the issue presented. In denying the public access to pretrial proceedings, that court wrote:

The defendants could not be expected to mount a challenge to the Title III material until they had had a fair opportunity to inspect the supporting documents; and they could not be expected to delay their challenges to the conditions of release while they marshaled their arguments for suppression. * * * In a highly publicized case such as this one, the premature publication of damaging communications that are later determined to have been unlawfully obtained and so not admissible in evidence might make a fair trial impossible, at least in the venue defendant would ordinarily prefer. In addition, the public disclosure of communications intercepted in violation of Title III would vitiate the privacy protection of the statute. Until the Title III material has been tested at a suppression hearing, a court considering whether material may be disclosed to the public should entertain the possibility that it was unlawfully obtained.

729 F.2d at 55.

I concluded my decision by stating that the First Amendment right of access may be revisited if the defendants' motion to suppress the wiretaps were denied. In a Memorandum and Order dated July 19, 1991, 771 F.Supp. 535, the motion to suppress the electronically recorded conversations was denied.

Also submitted and received under seal was the government's motion to disqualify Shargel, Cutler and Pollok, counsel for Gravano, Gotti and Gambino, respectively, together with voluminous material in support of that motion. The defendants' papers in opposition to that motion were submitted and received under seal as well. The oral argument on that motion was heard in open court but the electronically

recorded conversations upon which the government placed principal reliance were not permitted to be played. Insofar as the electronically intercepted and recorded conversations were central to the motion to suppress and to the motion to disqualify, determination of the latter was deferred until the former was decided. The motion to disqualify was decided on July 26, 1991.

The media has accepted my invitation to revisit the First Amendment right to access. They ask that that right be vindicated by uncovering all the submissions which have until now been sealed. For the reasons that follow, their request is granted and the Clerk of the Court is hereby directed to unseal the record thus far created in this case.

The relevant authorities which have grappled with the exquisite tension between the First and Sixth Amendments were reviewed in *United States v. Gotti,* 753 F.Supp. 443 (E.D.N.Y.1990) familiarity with which is assumed. The quintessential inquiry is whether there is a substantial probability that the defendants' right to a fair trial will be prejudiced. The answer to that inquiry, I suggested, inevitably involves the exercise of judgment which I exercised in favor of closure for the reasons then stated. The considerations which prompted that judgment no longer obtain.

The motion to suppress the fruits of the electronic surveillance has been denied. During the course of the oral argument on the motion to disqualify attorneys Cutler, Shargel and Pollok, assorted references were unavoidably made to portions of that surveillance which were duly reported by the media. The publicity which virtually every minute aspect of this case has received so far has been extensive. John Gotti and what is referred to as the Gambino Organized Crime Family have been the subjects of nearly as much media attention as has been given to matters of national and international moment. The fascination of our populace with these defendants and

the degree to which the media serves that fascination, has been or will be, I suspect, the subject of more than a few doctoral theses. Additional publicity which may flow from unsealing the record at this time would add microscopic grains, if even that, to the balance in favor of the Sixth Amendment. Additional publicity which may flow from unsealing the record at this time would, in my judgment, not give rise to a probability, substantial or otherwise, that the defendants' right to a fair trial will be prejudiced.

There is another significant consideration which enters into the calculus of my judgment to unseal the ·record at this time which was not present before.

Among the arguments presented by the media representatives in opposition to the defendants' motion to close the proceedings was that "any hearings conducted in private will have the inevitable and unfortunate result of creating doubts in the minds of the public that justice was done and will ultimately result in a diminishing of confidence in the judicial process." My response to that argument was as follows: "[T]he underlying assumption of this assertion, namely, that the public will suspect a closed hearing in a federal court, conducted by a federal judge, to be little less than a star chamber proceeding, indifferent to fundamental notions of due process and fairness, is a disquieting one and one which I reject in the firm belief that the history of the federal judiciary will not support it." *United States v. Gotti,* 753 F.Supp. at 446.

Since that decision was issued, the integrity of this court and its processes have been called into question. Public declarations have been made, for example, that "the Constitution has been thrown out the window" in this court; that the indictment returned against the defendants by a duly constituted grand jury was a manifestation of a governmental vindictive vendetta; that the prosecutor has lied to the court.[1] Such declarations may well create doubts in the minds of the public whether the federal

---

1. It should be noted, parenthetically, that a statement made by an attorney concerning a matter within his employment may be attributa-ble to his client. *United States v. McKeon,* 738 F.2d 26 (2d Cir.1984).

courts are indifferent to the Constitution of the United States; whether federal judges act in callous disregard of the fundamental rights of persons appearing before them and whether the government's enforcement of the criminal laws is motivated by personal animus and vindictiveness. Such declarations may, indeed, cause a diminution of confidence in the federal courts and its processes.

The doubts and diminution of confidence which such declarations may prompt gives particular immediacy to the public's First Amendment right of access to a criminal trial and its preliminary proceedings. *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). That right enables the public to observe their judges; to observe the manner in which they discharge the sensitive responsibilities of their office and to observe the judicial process in operation. *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982). Such access will either dispel doubts and bolster confidence in their governmental institutions or enable them to seek such redress of grievances and from such sources as they may deem appropriate.

Thus, the considerations which initially informed my judgment to close the bail hearing to the public and to seal the submissions no longer obtain. The denial of the motion to suppress the fruits of the electronic surveillance, and more particularly, the public declarations calling the integrity of this court and its processes into question, make it appropriate that the records of these proceedings be unsealed.

SO ORDERED.