**UNITED STATES of America, Plaintiff,**

v.

**Anthony F. LEONARDO Jr., Darryl T. Graham, Defendants.**

**United States of America, Plaintiff,**

v.

**Anthony F. Leonardo Jr.; Albert Ranieri, Defendants.**

**Nos. 01–CR–6001L, 01–CR–6002L.**

United States District Court, W.D. New York.

Jan. 12, 2001.

Charles B. Wydysh, AUSA, Bradley E. Tyler, AUSA, Rochester, NY, for Government.

John F. Speranza, Rochester, NY, for Leonardo.

William Clauss, Rochester, NY, for Graham.

Michael J. Tallon, Daniel L. Aureli, Rochester, NY, for Ranieri.

Sharon P. Stiller, Rochester, NY, for WOKR–TV and R–News.

Christopher D. Thomas, Rochester, NY, for Gannett Co. and WHEC–TV–10.

Stephanie L. Adler, Rochester, NY, for WROC–8.

## DECISION AND ORDER

FELDMAN, United States Magistrate Judge.

### Procedural Background

Currently pending before the Court are motions to close the courtroom during detention proceedings filed by defendant Darryl T. Graham (Docket # 11 (01–CR–6001L)), Anthony F. Leonardo (Docket # 12 (01–CR–6001L) and # 6 (01–CR–6002L)) and joined by Albert Ranieri. At the Court's direction (Docket # 13 (01–CR–6001L) and # 7 (01–CR–6002L)), the government has submitted a memorandum under seal and a memorandum of law in opposition to defendants' motions (Docket ## 14, 15 (01–CR–6001L) and ## 8, 9 (01–CR–6002L)) and various media outlets have submitted papers outlining their respective positions. (Docket ## 16, 17, 18 (01–CR–6001L) and ## 10, 11, 12 (01–CR–6002)). Oral argument was heard on January 12, 2001. For the following reasons, with an exception explained below, defendants' motions to exclude the public and the press from their detention hearings are **denied.**

### Factual Background

Defendants were arrested on December 29, 2000, on criminal complaints. (Docket # 1 (00–m–571), # 1 (00–m–572)). The criminal complaints were supported by the Affidavit of Special Agent Joseph Testani of the Federal Bureau of Investigation. The complaints set forth a wealth of factual details and refer to numerous recorded conversations among and between defendants and others.

During the initial appearances, the government moved to detain the defendants pursuant to 18 U.S.C. § 3141 *et seq.* The government's motion to detain was predicated on both dangerousness and risk of flight. The Court scheduled detention hearings for January 4, 2001.

On January 4, 2001, the Grand Jury returned indictments against the three defendants in the above-captioned action and arraignments were held the same day. Defendants Leonardo and Ranieri were charged in a two count indictment (01–CR–6002L) with charges of Title 21 U.S.C. §§ 841 and 846 and Title 18 U.S.C. § 924(c)(1). Defendants Leonardo and Graham were charged in a one count indictment (01–CR–6001L), which charged violations of 21 U.S.C. §§ 841 and 846. The defendants requested an adjournment of their detention hearings. For good cause shown, and without objection from the government, the Court granted the defendants' request to adjourn their detention hearings. The hearings were rescheduled for January 11, 2001, at 1:00 p.m.

On January 9, 2001, defendant Graham filed a motion asking this Court to seal the Courtroom from the public during the detention hearings. (Docket # 11). The following day, January 10, 2001, defendant Leonardo filed a motion seeking identical relief. (Docket # 12).[1] In their motion papers, defense counsel contend that closure of the courtroom is necessary to pro-

---

1. Although defendant Ranieri did not file a separate motion seeking closure, he orally joined in the motions of his co-defendants during a court proceeding on January 11, 2001.

tect their clients' right to a fair trial. Pursuant to an expedited scheduling and briefing Order issued by this Court, defendants and their counsel appeared in Court on January 11, 2001, and requested and consented to a further delay of their detention hearings until the Court could rule on their motions for closure. In addition, the Court provided notice of the defendants' closure motion to the media so as to allow them to appear in the closure hearing.

### Discussion

■ *Legal Framework:* Although motions to exclude the press and the public from court proceedings in criminal cases are infrequent, the law controlling the outcome of such motions is relatively well settled. Clearly, the public has a First Amendment right of access to criminal trials. *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). This right of access is grounded upon: (1) the fact that "the criminal trial historically has been open to the press and general public," and (2) a recognition that "the right of access to criminal trials plays a particularly significant role in the functioning of the judicial process and the government as a whole." *Globe Newspaper Co. v. Superior Court,* 457 U.S. at 605–606, 102 S.Ct. 2613.

■ While the Supreme Court has yet to specifically rule that the public's right of access applies to all *pretrial* proceedings, circuit courts, including the Second Circuit, have extended the First Amendment right of access to many pretrial proceedings. *See, e.g., In re Application of the Herald Co.,* 734 F.2d 93, 99 (2d Cir.1984); *United States v. Brooklier,* 685 F.2d 1162, 1169–71 (9th Cir.1982); *United States v. Criden,* 675 F.2d 550, 555 (3rd Cir.1982); *United States ex rel. Pulitzer Publishing Co.,* 635 F.2d 676, 678 (8th Cir.1980). More particularly, courts confronting the issue have held that the public and the media's right of access applies to bail and

detention hearings. *See United States v. Chagra,* 701 F.2d 354, 363 (5th Cir.1983) ("Pretrial release proceedings require decisions that attract significant public interest and invite legitimate and healthy public scrutiny"); *In re Globe Newspaper Co.,* 729 F.2d 47, 52 (1st Cir.1984) ("[T]he bail decision is one of major importance to the administration of justice, and openness will help to assure the public that the decision is properly reached").

■ Of course, acknowledging that the public and the press have a First Amendment right of access to bail and detention hearings does not end the Court's analysis. For like many of our constitutional rights, the public's right to be present at court proceedings is not an absolute right. Rather, it is a right which must, in some circumstances, be balanced against an equally important constitutional consideration: an accused's right to a fair trial. *Press–Enterprise Co. v. Superior Court,* 464 U.S. 501, 508, 104 S.Ct. 819, 78 L.Ed.2d 629 ((1984) (*"Press–Enterprise I"*) ("No right ranks higher than the right of the accused to a fair trial")). *See also In re Globe Newspaper Co.,* 729 F.2d at 53 ("When the rights of the accused and those of the public come irreconcilably into conflict, the accused's Sixth Amendment right to a fair trial must, as a matter of logic, take precedence over the public's First Amendment right of access to pretrial proceedings"). Where a case kindles intense public interest, "adverse publicity can endanger the ability of a defendant to receive a fair trial." *Gannett Co. v. DePasquale,* 443 U.S. 368, 378, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979). In these circumstances, a judicial officer "has an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity." *Id.*

■ Balancing these competing constitutional interests is no easy task. There is no litmus test available to the Court to precisely measure at what point an accused's Sixth Amendment right to a fair

trial is being unfairly infected by the media's First Amendment right to attend and report on court proceedings. To be sure, "[t]he possibility of unfavorable publicity does not . . . automatically justify the court in closing pretrial proceedings." *In re Globe Newspaper Co.*, 729 F.2d at 53. "[P]retrial publicity—even pervasive, adverse publicity—does not inevitably lead to an unfair trial." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 554, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976). Thus, before a court will close a pretrial proceeding that would otherwise be open to the public and the press, it must be satisfied: (1) that there is a "substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent," and (2) that "reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights." *Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 9, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) ("Press–Enterprise II"). *See United States v. Gotti*, 753 F.Supp. 443, 444 (E.D.N.Y.1990) (applying *Press–Enterprise* test to defendants' motion to close bail hearing).

■ *Application of Press–Enterprise Test:* Having established the legal framework, the Court turns now to the merits of the defendants' motions to close the detention hearing. The merits cannot be analyzed in a factual vacuum. For this reason, the Court required the government to file under seal (with copies served on defense counsel) a memorandum setting forth the details of their expected proffer in support of detention, including references to audio and videotape evidence that will be relied on. *See* Docket # 14 (01–CR–6001L) and # 8 (01–CR–6002L) (hereafter referred to as the "sealed proffer").[2]

The allegations set forth in the sealed proffer generally fall into three categories. "Category one" are factual allegations which concern criminal conduct alleged in the original felony complaints (Docket # 1 (00–m–571) and # 1 (00–m–572)) or the subsequent indictments returned by the federal grand jury. "Category two" are factual allegations which generally concern the so called AMSA robbery.[3] Finally, "category three" of the sealed proffer sets forth factual allegations involving one or more of the defendants which have not been previously subject to disclosure to the public through the media or otherwise. This final category is unique in the sense that it alleges specific uncharged conduct that is of such a nature that, at least in this Court's view, the defendants would have a strong legal and factual argument that it is irrelevant, if not inadmissible, on the charges currently set forth in the pending indictments. A summary of the allegations which form the basis for this third category is being separately filed under seal as exhibit "A" to this Decision and Order. All three categories of factual allegations are supported by specific references to videotape evidence as set forth in the sealed proffer.

The first step for this Court is to determine whether there exists a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent. "The burden on the movant to show prejudice increases the more extensive the closure sought." *United States v. Doe*, 63 F.3d 121, 129 (2d Cir.1995). Where, as here, the defendants seek total closure of the detention hearing, to sustain closure the court must find the prejudice to be "overriding." *Id.*

---

**2.** As this Court noted during oral argument, by practical necessity, the media was not privy to the government's sealed proffer and thus their arguments opposing closure were hampered by the lack of access to a full factual record. Despite this impediment, media counsel offered persuasive arguments in opposition to the defendants' closure motions.

**3.** "Ranieri was the driver of an armored truck that was robbed of $10.8 million in Henrietta in 1990. That case remains unresolved." Greg Livadas, *Court Asked to Close Leonardo Bail Hearing*, Rochester Democrat and Chronicle, January 12, 2001 at page 5B.

With respect to the first and second category of allegations in the sealed proffer (allegations concerning charged crimes and the AMSA robbery), I find that the defendants have failed to meet this heavy burden. As to "category one" allegations, the two publicly filed criminal complaints contain detailed factual recitations of alleged drug trafficking crimes involving the defendants. The complaints specifically refer to and describe meetings between and among the defendants, many of which also involve a confidential informant. The complaints refer to the fact that numerous telephone conversations and face to face meetings between the defendants were monitored and recorded. Indeed, the complaints describe the substance of many of these conversations and contain inculpatory verbatim quotes of the defendants as they allegedly engage in drug trafficking activities. The complaints allege that the defendants were trafficking in kilo quantities of cocaine and, on at least one occasion, brought $100,000 in cash to a drug transaction. In addition, the indictment against defendants Leonardo and Ranieri charge each of them with possessing, carrying and using a firearm in relation to a drug trafficking offense. Nor did defendants meet their burden with respect to the "category two" allegations. Although the AMSA robbery occurred in 1990, media attention to the story and specifically concerning Albert M. Ranieri can be fairly described as extensive and unwavering. *See e.g.* Patrick Flanigan, *Ranieri Faced Nearly Unrelenting Police Scrutiny*, Rochester Democrat and Chronicle, December 30, 2000 at page 6A.

Clearly then, details of both "category one" and "category two" allegations are already in the public domain. These allegations have been and no doubt will continue to be widely reported in both the print and broadcast media. *See* Affidavit of Meaghan O'Connor and attached exhibits, sworn to on January 11, 2001; Exhibit

"A" annexed to the January 12, 2001 Affidavit of Christopher D. Thomas. The defendants' desire to keep additional details of the category one and two allegations from the public eye is understandable. However, based on the totality of circumstances presented here I am persuaded that "the information sought to be kept confidential has already been given sufficient public exposure to preclude a closure order on this account." *In re Herald Company*, 734 F.2d at 101. *See United States v. Gotti*, 771 F.Supp. 567, 569 (E.D.N.Y.1991) ("Additional publicity which may flow from unsealing the record at this time, would, in my judgment, not give rise to a probability, substantial or otherwise, that defendants' right to a fair trial will be prejudiced"). *See also In re Charlotte Observer*, 882 F.2d 850, 854 (4th Cir.1989) ("[O]n the question whether the defendant's fair trial right would be decisively prejudiced by republication of portions of publicity earlier put in the public domain, we think that the magistrate's assessment that there is a substantial probability that it would is highly dubious"); *United States v. Modarressi*, 720 F.Supp. 16, 18 (D.Mass.1988) (media permitted to copy video-tape played at defendant's detention hearing because, *inter alia*, broadcast of the tape would not "materially alter" the nature of the pretrial publicity). Finally, the competent defense counsel that are involved in this case are well aware of the variety of alternative approaches trial judges traditionally use, even in cases involving intense media coverage, to protect their clients' fair trial rights.[4] Given the publicity that this case has generated, I have no doubt that counsel will avail themselves of these alternative approaches should they believe their clients' right to a fair trial is threatened by prejudicial pretrial media coverage.

 The category three evidence (as summarized in exhibit "A") stands on dif-

---

**4.** For example, requesting additional peremptory challenges, intensive voir dire, jury instructions, and change of venue motions are all alternatives to closure of court proceedings.

ferent footing in my view. It concerns allegations of the most serious nature which have never been publicly revealed or charged. Moreover, while the facts alleged in category one (and perhaps even the facts alleged in category two) could be admissible in the trial of the now pending indictments, the facts alleged in category three seem, at least to this Court, to concern conduct distinguishable from the criminal conduct alleged in the pending indictments. Of course, the fact that category three evidence may allege conduct inadmissible at trial does not render such evidence inadmissible for purposes of a detention hearing. Under the Bail Reform Act, before determining bail this Court is *required* to "take into account the available information concerning ... the history and characteristics" of the accused, including "the person's character." 18 U.S.C. § 3142(g)(3)(A).[5] Nevertheless, the fact that prejudicial evidence which may be inadmissible on the issue of guilt but admissible on the issue of bail creates a "strong argument" that judicial officers should show heightened concern about the threat that the public dissemination of such inadmissible evidence would have on the accused right to a fair trial.[6] *In re Globe Newspaper*, 729 F.2d at 57. ("[T]he privacy and fair trial interests of the defendants are at their zenith during the bail hearings, since they have not yet had an opportunity to test the material admitted at the hearings"). *See Gannett Co. v. DePasquale*, 443 U.S. at 378, 99 S.Ct. 2898 ("Publicity concerning the proceedings at a

pretrial hearing, however, could influence public opinion against a defendant and inform potential jurors of inculpatory information wholly inadmissible at the actual trial").

While the public filing of this Decision and Order prohibits this Court from discussing in detail the category three allegations, suffice it to say that I find that the conduct summarized in exhibit "A" presents far more than a "conclusory assertion that publicity might deprive the defendant" of a right to a fair trial. *Press Enterprise II*, 478 U.S. at 15, 106 S.Ct. 2735. Forecasting future prejudice based on yet to be published media articles or broadcasts is problematic. But, as the Fifth Circuit has noted: "It is better to err, if err we must, on the side of generosity in the protection of a defendant's right to a fair trial before an impartial jury." *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 431 (5th Cir.1981). Based on my review of the in camera submission, there exists a very real danger that public dissemination of the category three evidence would create a substantial probability of prejudice to the defendants in this case at this time.[7]

Having found a substantial probability that the defendants' constitutional right to a fair trial will be compromised by publication of the category three evidence, the Court next turns to whether reasonable alternatives to closure exist which adequately protect the defendants' fair trial rights. *Press–Enterprise II*, 478 U.S. at 9, 106 S.Ct. 2735. Further, if closure is war-

**5.** That the Court is required to consider the "history and characteristics" of the accused in determining bail does not necessarily mean that such information is required to be revealed to the press or the public. Indeed, the pretrial services report used by the Court and counsel in bail and detention hearings routinely contains information (mental health history, substance abuse information) that is not publicly filed or revealed.

**6.** Of course, any such heightened concern may well dissipate if the confidential conduct is subsequently revealed or subject to criminal charges. If this occurs, the Court retains the

right to revisit the issue and release transcripts, documents or evidence that were previously filed under seal.

**7.** "At this time" is not without significance. As the Court noted at oral argument, measuring the potential for substantial prejudice against the public's First Amendment rights is a continuing process and the result certainly may change over time. *See United States v. Gotti*, 787 F.Supp. 319 (E.D.N.Y.1992) (sealed submissions made at detention hearing publicly released where reasons for closure no longer existed).

ranted, the Court must "devise a closure order that, while not necessarily the least restrictive means available to protect the endangered interest, is narrowly tailored to that purpose." *United States v. Doe,* 63 F.3d at 128. The defendants here seek complete closure of the detention hearing.[8] Such relief is far too broad given the findings I have made in this Decision and Order. Instead, I believe that closure is appropriate only with respect to that portion of the detention hearing in which either the government or the defendants will address the category three evidence summarized in exhibit "A." The danger to the defendants is in the public dissemination of the category three evidence. Thus, closure limited to this evidence and this evidence alone is a uniquely effective remedy specifically and narrowly tailored to address the probability of prejudice.

### Conclusion

The public and the press have a constitutional right of access to criminal proceedings, including bail and detention hearings. However, where it has been demonstrated that curtailment of that right is required to protect an accused's constitutional right to a fair trial, then the accused's interests override the public's right of access. With the exception of the category three evidence summarized in exhibit "A" (filed separately as a sealed document) the defendants have failed to demonstrate that there is a substantial probability of prejudice to their fair trial rights and accordingly their motion to close the detention hearing is denied. However, with respect to the evidence summarized in exhibit "A," the Court finds that public disclosure of such evidence at this time does create a substantial probability of prejudice and a limited order of closure narrowly tailored to protecting the fair trial rights of the defendants will be entered.

**8.** During oral argument, counsel for all defendants reiterated their demand for total closure, although counsel for defendants Gra-

## ORDER

It is hereby ordered that:

1. The detention hearing in this case will, with one exception, be open to the public and the press. The exception is limited to proof summarized in exhibit "A" to this Decision and Order. Exhibit "A" shall be filed by the clerk under seal. Government counsel shall not introduce or otherwise comment on exhibit "A" evidence until such time as the courtroom has been closed. Likewise, defense counsel shall not respond to or comment on exhibit "A" evidence until the courtroom has been closed. The courtroom shall remain open for all · other detention hearing proceedings.

2. Any appeal from this decision and order must be filed with the clerk and personally served on all counsel of record no later than **10:00 a.m. on January 16, 2001.** If appeals are filed, oral argument shall be heard by Chief Judge Larimer on **January 16, 2001 at 2:00 p.m.**

3. Subject to Judge Larimer's decision on any appeal, the detention hearing in this matter shall be held on **January 18, 2001 at 1:30 p.m.**

4. Once any appeals have been determined, the government shall prepare a redacted version of their previously filed "sealed proffer." Unless altered by Judge Larimer on appeal, the redacted version shall redact all information concerning the allegations summarized in exhibit "A." Prior to publicly filing the redacted version, the government shall provide same to this Court for review and approval.

**SO ORDERED.**

ham and Leonardo agreed that limited or partial closure might be considered a reasonable alternative remedy.