**UNITED STATES of America**

v.

**Philip A. GIORDANO.**

**No. CR. 301MC200AHN.**

United States District Court,
D. Connecticut.

Aug. 7, 2001.

*RULING ON PENDING MOTIONS*

NEVAS, District Judge.

The defendant, Philip A. Giordano, was arrested on July 26, 2001, and charged in a criminal complaint with the use of interstate facilities to transmit information about a minor and conspiracy to do so in violation of 18 U.S.C. §§ 2425 and 371. At the defendant's initial appearance on July 26, 2001, the court, on motion of the defendant, ordered the Clerk to seal the complaint and supporting affidavit. The government moved for the defendant's pretrial detention under 18 U.S.C. §§ 4142(e) and (f).[1]

Thereafter, the Hartford Courant Co. and the American–Republican, Inc., publishers of the Hartford Courant and the Waterbury Republican–American, intervened and moved to vacate the court's order sealing the complaint and supporting affidavit [doc. # 8 and doc. # 19]. The defendant moved to close the bail hearing [doc. # 25].

For the following reasons, the intervenors' motions are DENIED. The defendant's motion is GRANTED.

*DISCUSSION*

■ There is no question that the cases on which the intervenors rely establish that the public has a common law and First Amendment qualified right of access to documents in the court file including affidavits supporting criminal complaints and to pretrial proceedings. *See Press–Enterprise Co. v. Superior Court of California,* 478 U.S. 1, 13, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986); *United States v. Graham,* Nos. 2001 WL 792664 at *4, 257 F.3d 143, 148 (2d Cir.2001); *In re Herald Co.,* 734 F.2d 93, 98 (2d Cir.1984). Affording the public and the press this right of access serves important societal interests that are fundamental to our democratic form of government by subjecting the judicial process to public scrutiny and assuring and promoting the public's confidence in the fairness of our judicial system.

■ There is also no question that the public's and the media's right of access is not absolute. *See Press–Enterprise,* 478 U.S. at 9, 106 S.Ct. 2735; *Nixon v. Warner Comm., Inc.,* 435 U.S. 589, 598, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978), *Graham,* 2001 WL 792664 at *5, 257 F.3d 143, 149. It is a qualified right that must be balanced against and, in some cases must yield to, the paramount interests of a criminal defendant. *See Press–Enterprise,* 478 U.S. at 9, 106 S.Ct. 2735.

■ In this and every other criminal case, the defendant has a Sixth Amendment right to a fair trial. Indeed, the Supreme Court has stated that "no right ranks higher than the right of the accused to a fair trial." *Id.* The Supreme Court has also noted that in cases that arouse intense public interest, as this case has already done, "adverse publicity can endanger the

---

1. On August 7, 2001, after holding a detention hearing, the court ordered the defendant detained without bail pending trial.

ability of the defendant to receive a fair trial." *Gannett Co. v. DePasquale,* 443 U.S. 368, 378, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979). Trial judges are entrusted with an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity. *See id.* "[B]ecause of the Constitution's pervasive concern for these due process rights, a trial judge may surely take protective measures even when they are not strictly and inescapably necessary." *Id.*

■    Thus, to protect and insure a defendant's right to a fair trial, the public's right of access must be balanced against the substantial probability that the defendant's right could be prejudiced by publicity resulting from public dissemination of information contained in judicial records and disclosed in pretrial judicial proceedings. *See Press–Enterprise,* 478 U.S. at 9, 106 S.Ct. 2735. Proceedings may be closed and documents may be sealed if "specific, on the record findings are made demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *In re New York Times Co.,* 828 F.2d 110, 115–116 (2d Cir.1987) (quoting *Press–Enterprise,* 478 U.S. at 9, 106 S.Ct. 2735).

■    According to the guidelines established by the Supreme Court, in order to justify an order sealing pretrial proceedings, the court must be satisfied that: (1) there is a substantial probability that a defendant's right to a fair trial would be prejudiced by publicity that closure would prevent, and (2) there are no reasonable alternatives to closure that would adequately protect a defendant's fair trial

rights. *See Press–Enterprise,* 478 U.S. at 14, 106 S.Ct. 2735.

One additional and significant factor that is present in this case and that must weigh heavily in the court's balancing is the fact that the information in the affidavit that the media seeks to unseal is comprised totally of communications and conversations that were electronically intercepted and recorded pursuant to a court-authorized Title III wiretap. *See New York Times,* 828 F.2d at 115–116. The government has advised that it intends to rely on, *inter alia,* this Title III material at the bail hearing.

■    Protection of individual privacy rights are of paramount importance and concern whenever there is a Title III wiretap. *See id.* at 115. Thus, Title III requires strict regulation of both the use of electronic surveillance and the use to which the information gathered through electronic surveillance may be put. *See id.; see also In re Globe Newspaper Co.,* 729 F.2d 47 (1st Cir.1984). If a wiretap or other electronic surveillance is not conducted in compliance with the provisions of Title III, it is unlawful and inadmissible in evidence in any court proceeding. *See* 18 U.S.C. §§ 2511, 2515; *see also New York Times,* 828 F.2d at 115; *Globe Newspaper,* 729 F.2d at 53 (stating that both Title III and the Fourth Amendment forbid the use or public dissemination of the fruits of unlawfully obtained Title III material).[2] The provisions of Title III could be violated if, for example, the surveillance was not properly authorized or was not carried out in con-

**2.** Contrary to the assertion of intervenor Hartford Courant, the holding in *Globe Newspaper* pertaining to public disclosure of untested Title III material has not been called into question or contradicted by subsequent decisions of the Supreme Court or the Second Circuit. *Cf. Gotti,* 771 F.Supp. 567; *Gotti,* 753 F.Supp. 443. Moreover, in *United States v.*

*Graham,* which did not involve Title III evidence, the Second Circuit expressly noted that its conclusion that the public should be allowed access to tapes played at a detention hearing would be affected if the evidence was clearly inflammatory and unlikely to be admitted at trial. *See* 2001 WL 792664 at *10, 257 F.3d 143, 155.

formity with the order that authorized it. *See Globe Newspaper,* 729 F.2d at 54.

■ In order for a defendant to challenge the legality of Title III evidence, he must first have an opportunity to inspect the order authorizing the surveillance and the documents supporting the request for the authorization. *See* 18 U.S.C. § 2518(9); *see also United States v. Melendez–Carrion,* 790 F.2d 984, 994 (2d Cir.1986) (noting that the purpose of § 2518(9) is to give the defendant an opportunity to make a motion to suppress). Until the defendant has had this opportunity, the fruits of an electronic surveillance should not be publicly disseminated. *See Globe Newspaper,* 729 F.2d at 54; *see also United States v. Gotti,* 753 F.Supp. 443 (E.D.N.Y.1990); *United States v. Gotti,* 771 F.Supp. 567 (E.D.N.Y.1991). "The extensive disclosure restrictions of Title III reflect Congress's recognition that when communications are unlawfully intercepted 'the invasion of privacy is not over when the interception occurs, but is compounded by disclosure.' " *Globe Newspaper,* 729 F.2d at 54 (quoting *Providence Journal Co. v. FBI,* 602 F.2d 1010, 1013 (1st Cir.1979)).

In this case, the defendant's counsel has not yet received the Title III material, nor has he had an opportunity or the time to review the extensive amount of that material. Thus, he could not have prepared or filed a suppression motion. It appears clear that counsel's time and efforts have been devoted to issues relating to the defendant's release and closure.

■ Applying the foregoing principles to the facts in this case and carefully balancing the defendant's fair trial rights against the public's qualified right of access to pretrial proceedings leads the court to conclude that the defendant's rights cannot be adequately protected unless the affidavit remains under seal and the bail hearing is closed. As the First Circuit said in reaching this conclusion in a factually similar case, the defendant's Sixth Amendment right to a fair trial must, as a matter of logic, take precedence over the public's First Amendment right of access to pretrial proceedings. Little would be gained if the public was admitted to pretrial proceedings in order to promote the appearance of fairness, while the very presence of the public would make a fair trial impossible. *See Globe Newspaper,* 729 F.2d at 53.

This conclusion is supported by the following facts and circumstances. The defendant is the Mayor of Waterbury and a former candidate for the United States Senate. He is a public figure whose arrest has been the subject of intense media scrutiny and attention. The court has carefully inspected the affidavit supporting the complaint and finds that it is comprised of actual quotations from Title III interceptions and statements based on such interceptions. The defendant has not received or reviewed the Title III evidence, the authorization or the supporting documents. He has not had the time or opportunity to challenge the legality of this evidence. In addition, the affidavit and the government's evidence contains information that is relevant at the bail hearing, but may not be admissible at trial.[3]

---

**3.** In a separate document filed under seal the court sets forth specific findings demonstrating that the Title III and other material is of such a prejudicial nature that closure is essential to preserve the defendant's rights. *See Herald Co.,* 734 F.2d at 101 (stating that such findings may be filed under seal); *Gotti,* 753 F.Supp. at 448 (noting that a public recital of specific findings demonstrating the court's conclusion would necessarily require divulging the contents of the prejudicial material and would thus defeat the very purpose of closure).

Accordingly, because the information to which the public seeks access consists of legally untested Title III evidence that may be inadmissible and irrelevant at trial, and because there is a substantial likelihood that this evidence would be the subject of the inordinate, extensive and unwavering publicity that this case has and will undoubtedly continue to receive, there exists a real danger that premature publication of this evidence could make a fair trial impossible. The court recognizes that pervasive publicity without more does not automatically deny a defendant a fair trial. *See Seattle Times v. United States District Court,* 845 F.2d 1513, 1517–18 (9th Cir. 1988). But, the court has assessed the nature of the information that would be the subject of pervasive publicity in this case and finds that it has a capacity to inflame and prejudice the entire community. *See id.* (quoting *CBS v. United States District Court,* 729 F.2d 1174, 1180 (9th Cir.1984)) (stating that to justify an order sealing pretrial records the publicity should be such as to create a pattern of deep and bitter prejudice in the community).

In reaching its decision, the court has also considered the availability of reasonable alternatives to closure that could adequately protect the defendant's fair trial rights. *See Press Enterprise,* 478 U.S. at 14, 106 S.Ct. 2735. However, under the unique circumstances presented here, the court is unable to fashion a narrowly-tailored closure order, and does not find that any of the traditionally-recognized alternatives to closure present a viable option.

Redaction is not a reasonable alternative because the entire affidavit consists of electronically intercepted wire communications or statements based on the intercepted communications. Partial closure of the bail hearing is not a feasible alternative even though the government will proffer evidence in addition to the Title III con-

versations. But, because it appears that this other evidence is the fruit of the wire interceptions, it also should not be publicly disseminated before it is legally tested. *See Globe Newspaper,* 729 F.2d at 54 (holding that fruits of an electronic surveillance should not be publicly disseminated until the defendant has had the opportunity to challenge the legality of the Title III surveillance). Moreover, a partial closure would be unworkable and would not permit the parties and the court to engage in the full and fair exchange that is needed to develop the issues that are relevant and material to the court's decision to release or detain the defendant.

A change of venue is also not a viable alternative because the publicity in this case is as intense and pervasive in Waterbury, Hartford, and New Haven, the only other seats of court in this district. Transfer out of state is not feasible because the defendant has a right to be tried in the state and district where the alleged crime was committed. *See Gotti,* 753 F.Supp. at 448 (citing U.S. Const., art. III, § 2, cl 3; F.R.Crim.P. 18).

The prejudice to the defendant that would result from pretrial disclosure is such that affording the defendant additional peremptory challenges, extensive voir dire, and curative jury instructions would not be sufficient to eliminate it. *See Gotti,* 753 F.Supp. at 447–49 (noting that the deep and bitter prejudice that would exist throughout the community as a result of public disclosure of untested inflammatory and prejudicial Title III evidence would pose voir dire problems that were real and not imaginary).

In conclusion, the court is satisfied that there is a substantial probability that the defendant's Sixth Amendment right to a fair trial as well as his privacy rights under Title III will be prejudiced by pretrial public disclosure of the information con-

tained in the affidavit and disclosed at the bail hearing, and there are no reasonable alternatives to closure that would adequately protect the defendant's rights. The public's qualified right of access to the information does not outweigh the defendant's paramount rights. As the Fifth Circuit stated in similar circumstances, "it is better to err, if err we must, on the side of generosity in the protection of a defendant's right to a trial before an impartial jury." *Belo Broad. Corp. v. Clark,* 654 F.2d 423, 431 (5th Cir.1981).

Accordingly, for all of the foregoing reasons the motions of the intervenors to vacate the order sealing the case are DENIED. The defendant's motion to close the bail hearing is GRANTED.

The court's ruling is subject to reconsideration if a suppression hearing establishes that the Title III electronically intercepted conversations and communications were lawfully obtained.